## ATHENAHEALTH MASTER SERVICES AGREEMENT

Until accepted by Athena, this form is an offer from Client to Athena to contract on the terms below. After execution by Client and acceptance of this form by Athena, an Athena Senior Vice President will countersign it, and this form will then become effective as a binding agreement as of the date of such countersignature.

**Section 1. Defined Terms.**

"**Agreement**" means this Master Services Agreement, the Exhibit and any Riders attached hereto, the Third Party Terms, each Proposal, and each Service Description.

"**Applicable Law**" means all applicable federal, state, and local laws and regulations, including, without limitation, those relating to kickbacks, fraud and abuse, confidentiality (including HIPAA), Medicaid, or Medicare.

"**Athena**" means athenahealth, Inc. and its subsidiaries, 311 Arsenal St., Watertown, MA 02472; Tel: 617.402.1000; Fax: 617.402.1099.

"**athenaNet**" means the internet-based athenaNet® multi-user platform used to provide athenaNet Services, together with athenaNet Functionality and associated databases.

"**athenaNet Content**" means any data made available by Athena as part of the athenaNet Services and all documents, formats, forms, functions, and screens for organizing or presenting that data.

"**athenaNet Functionality**" means the software functionality of athenaNet that enables system access and use.

"**athenaNet Services**" means the services provided by Athena under this Agreement, including, but not limited to, access to and use of athenaNet by Client and the provision of athenaNet Content and Materials.

"**Authorized Users**" means those users designated by Client on athenaNet control screens who are (i) employees of Client or (ii) other individuals, corporations, or entities that have a valid HIPAA business associate agreement or other agreement with Client and have been granted access to athenaNet by Client in its exercise of reasonable discretion and with respect to which Client has obtained reasonable assurances that they will comply with the access and use terms and the confidentiality terms in this Agreement.

"**Billable Practitioner**" means a physician or licensed or specially trained non-physician who is credentialed with payers, linked to Client's organization, and performs health services for Client's customers.

"**Client**" is Children's Hospital Central California (use full legal name)
  Address: 9300 Valley Childrens Pl Madera CA US 93636-8761
  Tel: (559) 353-3000 Fax: (559) 353-5311 Client Tax I.D.: 94-1294954
  E-mail: mgengozian@childrenscentralcal.org

"**Collections**" means all sums received by Client for any health care items or services furnished by Client to patients if such sums are posted in athenaNet or if athenaNet Services have been used to schedule such health care or to bill, track, or follow up on such sums. Collections include, without limitation, co-pays, withhold returns, surplus distributions, bonus payments, incentive program payments, revenue sharing, capitation payments, and other managed care payments. Collections do not include (a) payments for Client administrative services not performed using athenaNet or athenaNet Services and (b) amounts refunded to or taken back by any payer during the term of this Agreement in regard to sums qualified as Collections during that time.

"**Confidential Information**" means information that is disclosed by one Party to the other and that the receiving Party knows is confidential to the disclosing Party or that is of such a nature that someone familiar with the type of business of the disclosing Party would reasonably understand is confidential to it. Without limitation, Confidential Information includes financial and other business information of either Party, athenaNet Functionality, athenaNet Content to the extent provided by Athena, Materials, each Service Description, and business information of Athena. Notwithstanding the foregoing, Confidential Information does not include PHI or information that the receiving Party can demonstrate: (a) is in the public domain or is generally publicly known through no improper action or inaction by the receiving Party; (b) was rightfully in the receiving Party's possession or known by it prior to receipt from the disclosing Party; (c) is rightfully disclosed without restriction to the receiving Party by a third party without violation of obligation to the disclosing Party; or (d) is independently developed for the receiving Party by third parties without use of the Confidential Information of the disclosing Party.

"**Effective Date**" means the date this form is countersigned by Athena.

"**HIPAA**" means the Health Insurance Portability and Accountability Act of 1996, and associated regulations, as they may be amended from time to time.

"**Materials**" means all instructions, manuals, specifications, and training Athena provides in connection with the athenaNet Services.

"**Party**" means Athena or Client. "**Parties**" means Athena and Client.

"**PHI**" means "protected health information" as that term is used under HIPAA. "**Client PHI**" means PHI that Athena receives from or on behalf of Client or creates on behalf of Client.

"**Privacy Rule**" means the privacy standards in 45 C.F.R. Part 160 and Part 164, subparts A and E.

"**Proposal**" means Athena Proposal # O-2266984-8 (must indicate unique identifier) and each Athena Proposal entered into by the Parties after the Effective Date and incorporated herein by reference.

"**Rider**" means each document listed as follows: N/A.

"**Security Rule**" means the Security Standards in 45 C.F.R. Part 160 and Part 164, subparts A and C.

"**Service Description**" means each document periodically updated by Athena and incorporated herein that contains a description of any of the athenaNet Services.

"**Third Party Items**" means the third party products and services incorporated into athenaNet and sublicensed to Client hereunder.

"**Third Party Terms**" means the third party pass-through terms and conditions set forth at http://www.athenahealth.com/tpt and incorporated by reference herein pursuant to which the Third Party Items are sublicensed to Client.

**Section 2. Athena Services and Payment.**

(a) Athena will provide the athenaNet Services as described in each applicable Service Description. The Parties agree to perform their respective obligations as set forth in this Agreement.

(b) Client will pay Athena the fees and expenses as set forth in each Proposal. Athena may, at its option, impose a late charge of 1½% per month on all amounts overdue beyond 10 days, but this charge will not waive or extend any obligation of Client to make payments when due.

**Section 3. Term and Termination.**

(a) This Agreement will have a term of one year from the Effective Date, and will be automatically extended for additional consecutive one-year terms unless either Party notifies the other Party no less than 90 days prior to the renewal date that it is terminating this Agreement at the end of the then current term.

(b) Either Party may terminate this Agreement or any of the athenaNet Services at any time, with or without cause, by providing the other Party with no less than 90 days prior written notice.

(c) Either Party may terminate this Agreement effective upon notice to the other if (i) the other Party defaults in performance of any material provision of this Agreement, and such default is not cured within a period of 30 days after written notice describing the specific default (10 days in the event of failure to pay amounts owed); (ii) voluntary or involuntary proceedings are commenced for the bankruptcy, receivership, insolvency, winding up, or dissolution of the other Party or for the assignment of such Party's assets for the benefit of creditors; or (iii) any right of the other Party under this

Agreement becomes subject to any levy, seizure, assignment, application, or sale for or by any creditor or governmental agency.

(d) Athena may terminate this Agreement effective upon notice if Client violates the System and Service Access and Use provisions hereunder.

(e) If Athena determines that any material Client information (including, but not limited to, Client size, type, specialty, configuration, annual volume of Client claims, or annual fee for service collections) is materially inaccurate, incomplete, or varies from the information actually recorded in athenaNet by at least 15%, then Athena may require Client to agree to additional or alternative terms or pricing. If the Parties cannot reach mutual agreement after good faith discussion as to such alternative terms or pricing, Athena may terminate this Agreement upon 30 days notice to Client.

(f) Client may terminate this Agreement upon 15 days notice to Athena if any revision by Athena of a Service Description materially and adversely affects the service that it receives, provided that such notice must be provided within 60 days after Client is first informed of such revision.

(g) Upon expiration or termination of this Agreement or any athenaNet Service, Client will immediately pay to Athena all amounts due hereunder for all services rendered through the date of termination.

### Section 4. System and Service Access and Use.

(a) Access to athenaNet is provided solely to facilitate access to athenaNet Services. Client access to athenaNet is on a limited, non-exclusive, non-transferable basis only during the term of this Agreement. Client agrees that it will access athenaNet only (i) through its Authorized Users acting within the scope of their service for Client; (ii) on Athena's servers as authorized by Athena; (iii) for the internal use of Client; and (iv) from and within the United States. Client will not split patient service related billing and billing-related office workflow between different billing systems unless Client (i) uses a different tax identification number for claims submitted through a different billing system or (ii) agrees to use Athena's mixed remittance process with respect to such claims.

(b) Client will ensure that each Authorized User will comply with this Agreement as well as Applicable Law. Client will terminate any Authorized User's access to athenaNet (i) when an Authorized User ceases to perform work on behalf of Client or (ii) if an Authorized User breaches any term of this Agreement. Client is responsible for all acts and omissions of any Authorized User in connection with that Authorized User's access and use of athenaNet. Athena reserves the right to restrict or terminate an Authorized User's access to athenaNet if Athena determines in its reasonable discretion that such access has an adverse effect on Athena, including, without limitation, with respect to Athena's business or athenaNet.

(c) Client will not (i) access or use athenaNet in connection with provision of any services to third parties (except the provision of health services by Client to its own patients); (ii) resell, lease, encumber, copy, distribute, publish, exhibit, or transmit athenaNet to any third party; (iii) derive specifications from, reverse engineer, reverse compile, disassemble, translate, record, or create derivative works based on athenaNet or any content contained therein; (iv) use athenaNet in a manner that delays, impairs, or interferes with system functionality for others or that compromises the security or integrity of any data, equipment, software, or system input or output; (v) enter data in athenaNet that is threatening, harmful, lewd, offensive, defamatory, or that injures or infringes the rights of others; (vi) apply systems to extract or modify information in athenaNet using technology or methods such as those commonly referred to as "web scraping," "data scraping," or "screen scraping"; or (vii) use the athenaNet Services or any part or aspect of them for any unlawful purpose or to mislead or harass anyone. Use of or access to athenaNet not in accordance with the terms in this Agreement is strictly prohibited. Permission to access or use athenaNet may be limited or suspended immediately in Athena's discretion if the terms of this Section 4 are violated. Client agrees that such violation would cause Athena irreparable and immediate harm and that Athena is entitled to injunctive relief to prevent such violation.

### Section 5. Confidential Information.

Each Party will take reasonable steps and exercise reasonable care to hold any Confidential Information in confidence and not to use it or disclose it to any other person or entity, except (i) as permitted under this Agreement or as reasonably necessary for the performance or enforcement of this Agreement; (ii) as agreed in writing by the other Party; (iii) for the Party's proper management and administration (provided that it obtains reasonable assurances from all recipients that the information will be kept confidential and used only for the purpose of its disclosure); or (iv) as required by law. The Parties will also comply with the terms set forth on Exhibit A hereto.

### Section 6. Usage and Ownership.

Except for the right to use the athenaNet Services subject to the terms and conditions contained herein, this Agreement does not confer on Client a license in, ownership of, or interest in the athenaNet Services. Athena developed athenaNet exclusively at its private expense. Client agrees that athenaNet, the athenaNet Services, and all right, title, and interest in and to any aspect of them and all edits, improvements, additions, modifications, and derivative works prepared from or relating to them are and will remain the exclusive property of Athena. Athena will have the unrestricted and permanent right to use and implement all ideas, advice, recommendations, or proposals of Client with respect to the athenaNet Services in any manner and in any media.

### Section 7. Compliance.

(a) Each Party will comply with Applicable Law.

(b) The Parties acknowledge and agree that (i) any fees charged or amounts paid hereunder are not intended, nor will they be construed to be, an inducement or payment for referral of patients among Athena, Client, or any third party and (ii) they will not enter into any agreements, or otherwise make any payments, for the purpose of rewarding the referral of patients among Athena, Client, or any third party.

(c) The Parties will each separately maintain effective compliance programs consistent with the relevant compliance guidelines set forth by the Office of the Inspector General of the Department of Health and Human Services. The Parties will cooperate with each other to provide accurate and full responses to any material inquiry or concern of either Party related to compliance and to any reasonable request by either Party for clarification, documentation, or further information concerning Client billing or Client's provision of, or referrals related to, health services for its patients.

(d) Client warrants to Athena on a continuing basis throughout the term of this Agreement that Client will not bill or claim payment in any form, directly or indirectly, from any government health care program or other third-party payer for the cost of any athenaNet Services, including, without limitation, on a government cost report.

(e) No payment to or receivable of Client or any Billable Practitioner is assigned to Athena, and Athena is not the beneficiary of any such payment or receivable. All such payments and receivables (including, but not limited to, checks and electronic fund transfers) will be payable to Client or the Billable Practitioner and will remain the property of Client or the Billable Practitioner. Athena will not endorse or sign any such check or instrument. Any lockbox or other account into which Client payments or receivables are deposited will remain in the name of, and under the sole ownership and control of, Client or the Billable Practitioner and subject only to the instructions of Client or the Billable Practitioner. Athena will not be a signatory on or have any power to transfer or withdraw from any account into which Client or Billable Practitioner payments or receivables from any federally funded program are deposited.

(f) Each Party warrants that neither it nor any of its personnel to its knowledge (i) has been convicted of any crime arising from claims

or other transactions, financial relationships, or financial dealings in connection with health care or (ii) has been excluded from any federal or state health care program. Client warrants to Athena that it and its Billable Practitioners are and will be duly licensed and authorized to provide and bill for the health services that they render.

(g) Client must verify the accuracy, completeness, and appropriateness of all information entered into or selected in athenaNet, including information from third-party functionality, before such information is utilized. Client acknowledges and agrees that the professional duty to treat the patient lies solely with Client, and use of information contained in or entered into athenaNet, or provided through the athenaNet Services, in no way replaces or substitutes for the professional judgment or skill of such entity or provider. Client is responsible and liable for the treatment of patients as to whom Client and its personnel access or use the athenaNet Services, including responsibility for personal injury or loss of life. Client represents and warrants to Athena that all data it provides to Athena or that it selects in athenaNet, including, but not limited to, codes and practitioner identifiers, are accurate and in conformity with all legal requirements, its medical records appropriately support all codes that it enters, selects or approves, it and its personnel are duly authorized to enter and access such data, and Athena is duly authorized to receive, use, and disclose such data subject to the terms of this Agreement. Athena is not a health plan or healthcare provider and it cannot and does not independently review or verify for medical accuracy or completeness the medical information entered into, or made available to it in, athenaNet. Use of and access to the athenaNet Services, including, but not limited to, clinical information in athenaNet, is at the sole risk and responsibility of Client and any practitioner or health care provider or facility using data provided by Athena as part of the athenaNet Services. Athena shall not be liable for any action or inaction of Client which may give rise to liability under the False Claims Act.

**Section 8. Warranties and Limitations.**

(a) *Non-infringement*. Athena warrants to Client that athenaNet Functionality, when used properly and as expressly authorized by Athena, (i) contains no code, virus, or other mechanism to disable, adversely affect, harm, or grant access or use not permitted by this Agreement to any Client data or to any equipment approved in writing by Athena for use with athenaNet and (ii) does not infringe on or misappropriate any valid and registered patent, registered copyright, or other registered intellectual property right under laws of the United States, provided that Athena makes no warranty to the extent that such infringement or misappropriation results from (A) use or access of athenaNet by Client in combination with any data, software, or equipment provided by Client or any third party that could have been avoided by use or access of athenaNet without such data, software, or equipment or (B) any breach of any agreement by, or any negligent or other wrongful act or omission of, any third party or Client.

(b) *Minimum Service Commitments*. Athena warrants to Client that the athenaNet Services will substantially conform to the Minimum Service Commitments designated and described in the applicable Service Description. Client will promptly review all Minimum Service Commitments reports provided by Athena which will be deemed binding on Client unless Client notifies Athena of its disagreement with any such report within 90 days of Client's receipt of the report.

(c) EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, ATHENA UNDERTAKES NO OBLIGATION TO PROVIDE ERROR-FREE OR FAULT-FREE ITEMS OR SERVICES. TO THE EXTENT PERMITTED BY LAW, THE ATHENANET SERVICES ARE PROVIDED "AS IS" WITH ALL FAULTS AND DEFECTS. EXCEPT AS EXPRESSLY PROVIDED HEREIN, ATHENA DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE, EXPRESS OR IMPLIED (EITHER IN FACT OR BY OPERATION OF LAW), WITH RESPECT TO ANY SERVICE OR ITEM PROVIDED HEREUNDER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, TITLE, DESIGN, INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTY ARISING FROM CONDUCT, COURSE OF DEALING, CUSTOM, OR USAGE IN TRADE.

(d) No claim against Athena of any kind under any circumstances will be filed more than one year after Client knows, or in the exercise of reasonable care could know of, such claim, or an act or omission of Athena that would give rise to such claim.

(e) The remedy of a credit as set forth with respect to any Minimum Service Commitment in the applicable Service Description will be the sole and exclusive remedy for the acts or omissions of Athena relating to the performance of that Minimum Service Commitment. Notwithstanding any provision in this Agreement to the contrary, the combined aggregate credit remedy with respect to all Minimum Service Commitments on account of any month is limited to a maximum of 20% of the monthly service fee (as defined in the applicable Service Description) for that month.

(f) Athena's cumulative, aggregate liability in connection with or arising in any way or in any degree from this Agreement, from the athenaNet Services, or otherwise from the acts or omissions of Athena under any and all legal theories will not exceed the lesser of (i) $500,000 or (ii) the total amount paid by Client to Athena in the 12 months before such claim arose. If damages are measured by the cost of medical services provided or the dollar value of claims submitted, Athena's liability for such damages will not exceed the service fees attributable to such services or claims. Athena will not be liable for and will not incur any credit or remedy against it for failure to provide services or functionality with respect to any claim, statement, or transaction that it believes in good faith contains inaccurate, misleading, or otherwise improper information. NOTWITHSTANDING ANYTHING TO THE CONTRARY, ATHENA WILL NOT BE LIABLE UNDER ANY LEGAL THEORY FOR INDIRECT, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OR LOSSES; LOST PROFITS OR BUSINESS OPPORTUNITIES; OR THE COST OF PROCUREMENT OF SUBSTITUTE ITEMS OR SERVICES. Client hereby acknowledges that the remedies set forth above are reasonable and will not fail of their essential purpose.

**Section 9. Sublicensed Intellectual Property.** As applicable in connection with the athenaNet Services, Athena hereby grants to Client a limited, non-exclusive, non-transferable, non-sublicensable and royalty-free sublicense to the Third Party Items subject to the Third Party Terms. Athena reserves the right to modify the Third Party Terms in the event Athena adds or replaces Third Party Items or as required in connection with changes to the third party license agreements for the Third Party Items. Athena agrees to use commercially reasonable efforts to post the current Third Party Terms on athenaNet and notify Client through an alert on athenaNet when Athena has posted revised Third Party Terms. The Third Party Items will not be deemed part of athenaNet, athenaNet Content, athenaNet Functionality or the athenaNet Services. All sublicenses granted hereunder are solely for Client's use in connection with the athenaNet Services and will terminate on the earlier of expiration or termination of (a) this Agreement or (b) the applicable agreement between Athena and the licensor of the Third Party Items.

**Section 10. Force Majeure.** No failure, delay, or default in performance of any obligation under this Agreement (other than payment obligations) will constitute a breach of this Agreement if it is caused by strike, fire, shortage of materials, act of a public authority, civil disorder, riot, vandalism, war, severe weather, natural disaster or other act of God; terrorism; or other cause that is beyond the reasonable control of the Party otherwise chargeable, for so long as such cause continues and for a reasonable period of time thereafter.

**Section 11. Mediation.** The Parties agree to submit all claims or controversies arising out of or relating to this Agreement to mediation in Boston, Massachusetts, in accordance with the American Health Lawyers Association (AHLA) Alternative Dispute Resolution Service Rules of Procedure for Mediation. Such

mediation must be initiated by notifying the other Party of written demand for mediation and notifying the AHLA Alternative Dispute Resolution Service. The Parties will equally share the costs of the mediation. If the dispute is not resolved by mediation within 60 days, the Party seeking relief will have the right to pursue all remedies available at law. Notwithstanding the foregoing, either Party may (i) terminate this Agreement according to its terms or (ii) seek injunctive relief to prevent irreparable and immediate harm.

**Section 12. Forum, Choice of Law.** This Agreement will be governed by the laws of the Commonwealth of Massachusetts applicable to agreements made and to be performed wholly within Massachusetts, without regard to its conflicts of laws principles. The Federal District Court for the District of Massachusetts or the business litigation section of the state superior court of Massachusetts will be the exclusive venue for any court proceeding between the Parties arising out of, or in connection with, this Agreement. The Parties hereby submit to and consent irrevocably to the jurisdiction of such courts for these purposes.

**Section 13. Notice.** Notice under this Agreement will mean written notification addressed to the individual signing this Agreement at the address listed above that is (i) delivered by hand, (ii) sent by traceable nationwide parcel delivery service, overnight or next business day service, or (iii) sent by certified United States mail. Properly mailed notice will be deemed given 3 days after the date of mailing, and other notice will be deemed made when received. A Party may change its address for notice purposes by providing written notice of such change to the other Party.

**Section 14. Miscellaneous.** This Agreement constitutes the entire agreement between the Parties relating to the athenaNet Services and supersedes all prior agreements, understandings, and representations relating to the athenaNet Services. No change in this Agreement will be effective or binding unless signed by Client and a duly authorized officer of Athena. Neither Party will assign this Agreement without the written consent of the other, provided that either Party may assign this Agreement with no less than 90 days prior written notice as part of a corporate reorganization, consolidation, merger, change of control with respect to its outstanding stock, or sale of substantially all of its assets, and provided further that the assigning Party and the assignee will remain liable for any unperformed obligations under this Agreement arising prior to the effective date of any such transaction. This Agreement will be binding on the Parties and their successors and permitted assigns. Nothing contained in this Agreement will be construed to create a joint venture, partnership, or like relationship between the Parties, and their relationship is and will remain that of independent Parties to a contractual service relationship. In no event will either Party be liable for the debts or obligations of the other Party. Client may not advertise, market, promote, or publicize in any manner its use of and access of the athenaNet Services without the express written consent of Athena in each instance. Except as explicitly set forth herein, none of the provisions of this Agreement will be for the benefit of or enforceable by any third party. Section titles are for convenience only and will not affect the meaning of this Agreement. No failure by a Party to insist upon the strict performance of any term or condition of this Agreement or to exercise any right or remedy hereunder will constitute a waiver. In connection with the athenaNet Services, a copy of a signed document sent by PDF or telephone fax will be deemed an original in the hands of the recipient. The following portions of this Agreement will survive termination and continue in force: Sections 5, 6, 8(c)-(f), 9, and 11 through 14.

**ATHENAHEALTH, INC.**

By: _Blakeway_ (signature)
Name: Jody Blakeway
Title: Senior Vice President, Client Services
Date: 11/14/12

**CLIENT**

By: _M Waldron_ (signature)
Name: Michele Waldron
Title: CFO
Date: 11/1/12

---

### Auto Debit Authorization Form – Please Print Clearly

The undersigned Client ("Client") hereby authorizes athenahealth, Inc. ("Athena") to initiate debit entries to Client's account indicated below, and the financial institution named below ("Institution") is hereby authorized to debit such account as initiated by Athena. This authorization is for the purpose of fees periodically invoiced under the ATHENAHEALTH MASTER SERVICES AGREEMENT. Client understands that debited amounts may vary, and Client authorizes debits for the full amount due each month. This authorization will remain in full force and effect until certification that Athena has received written notification from Client of its termination and Institution has had a reasonable opportunity to act upon it. Athena may detach this form or exhibit it separately to Institution as necessary.

| Financial Institution Name: | Branch: | Address (Number, Street, City, State, and ZIP): |
|---|---|---|
| Type of Account:<br>☐ Checking<br>☐ Savings | Client Tax ID Number: | Account Number:<br>Routing Number: |

Full Legal Name of Client: Children's Hospital Central California

By: _____ (President, General Partner, Treasurer, or other individual authorized according to the records of the financial institution identified above)
Print Name and Position: _____   Date: _____

## EXHIBIT A TO ATHENAHEALTH MASTER SERVICES AGREEMENT

### The terms in this Exhibit A will constitute a Business Associate Agreement under HIPAA

**Article CSD-1. Definitions.** For purposes of this Exhibit A:

(a)  **"Agreement"** shall mean the Master Services Agreement to which this Exhibit A is attached.

(b)  **"Breach"** shall mean an impermissible use or disclosure under the Privacy Rule that compromises the security or privacy of the protected health information such that the use or disclosure poses a significant risk of financial, reputational, or other harm to the affected individual.

(c)  **"Business Associate"** shall have the meaning given such term in 45 C.F.R. §160.103.

(d)  **"HITECH Act"** shall mean the Health Information Technology for Economic and Clinical Health Act (Title XIII of the American Recovery and Reinvestment Act of 2009) and associated regulations, as amended from time to time.

(e)  **"Unsecured PHI"** shall mean PHI that is not rendered unusable, unreadable, or indecipherable to unauthorized individuals through the use of technology or methodology specified by the Department of Health and Human Services (**"HHS"**) pursuant to the HITECH Act and as set forth on the HHS website.

**Article CSD-2. Athena's Duties.** Athena will:

(a)  not use or disclose Client PHI except (i) as required or permitted by law, (ii) as permitted under the terms of the Agreement or any permission of Client under the Agreement, or (iii) as incidental under HIPAA to another permitted use or disclosure;

(b)  use reasonable and appropriate safeguards to prevent use or disclosure of Client PHI other than as provided in the Agreement;

(c)  implement administrative, physical, and technical standards in accordance with the Security Rule to protect the confidentiality, integrity, and availability of Client PHI in electronic form (**"EPHI"**);

(d)  not use or disclose Client PHI in a manner that Athena knows would violate the requirements of HIPAA if done by Client;

(e)  mitigate, to the extent practicable, any harmful effect of a use or disclosure of Client PHI by Athena that is known to Athena to be in violation of the requirements of the Agreement;

(f)  report to Client as soon as practicable and as required by HIPAA and the HITECH Act any known use or disclosure of Client PHI by Athena not as provided by the Agreement and any "Security Incident" with respect to Client EPHI as defined in the Security Rule. Additionally, Athena will notify Client of any Breach of Unsecured PHI, and such notification shall be made without unreasonable delay following the date of discovery to enable Client to comply with the Breach disclosure requirements under the HITECH Act. Athena shall include within such notice identification, to the extent possible, of each individual whose Unsecured PHI has been, or is reasonably believed by Athena to have been, accessed, used, or disclosed through the Breach and any other valuable information known to Athena that Client is required to include in its notice to affected individuals. The reporting requirement set forth hereunder shall include, without limitation, disclosures that Athena is aware of that would need to be included in Client's accounting of disclosures under HIPAA and/or HITECH Act, provided that Athena is required by HIPAA and the HITECH Act as a business associate of Client to include such disclosures;

(g)  require any agent, including a subcontractor, under the Agreement to whom Athena provides Client PHI to agree to substantially the same restrictions and conditions with respect to Client PHI and Client EPHI that apply through this Exhibit A to Athena with respect to such PHI;

(h)  at the request of Client, provide access to Client PHI in a Designated Record Set to Client or, as properly directed by Client, to an individual in order to meet the requirements under 45 C.F.R. §164.524;

(i)  at the request of Client, make any amendment to such Client PHI in a Designated Record Set that Client properly directs or agrees to pursuant to 45 C.F.R. §164.526;

(j)  make its internal practices, books and records relating to the use and disclosure of Client PHI available to the Secretary of Health and Human Services for purposes of the Secretary's determination of Client's compliance with HIPAA requirements;

(k)  document such disclosures of Client PHI and information related to such disclosures as would be required for Client to respond to a request by an individual for an accounting of disclosures of it in accordance with 45 C.F.R. §164.528; and

(l)  provide to Client information collected in accordance with this Article to permit Client to respond to an appropriate request for an accounting of disclosures of Client PHI in accordance with 45 C.F.R. §164.528.

**Article CSD-3. Client's Duties.** Client will:

(a)  not request, direct, or cause Athena to use or disclose PHI unless the use or disclosure is in compliance with applicable law relating to the privacy and security of patient data and is the minimum amount necessary for the legitimate purpose of such use or disclosure;

(b)  notify Athena of any limitation in its notice of privacy practices in accordance with 45 C.F.R. §164.520, to the extent that such limitation may affect Athena's use or disclosure of Client PHI;

(c)  notify Athena of any changes in, or revocation of permission by, an individual to use or disclose Client PHI, to the extent that such changes may affect Athena's use or disclosure of Client PHI; and

(d)  notify Athena of any restriction on the use or disclosure of Client PHI that Client has agreed to in accordance with 45 C.F.R. §164.522, to the extent that such restriction may affect Athena's use or disclosure of Client PHI.

**Article CSD-4. Business Associate Permitted Purposes.** Athena's use and disclosure of Client PHI is permitted for the following purposes: (a) to provide the athenaNet Services (including, but not limited to, receipt from and disclosure to payers, patients, vendors, and others in order to provide athenaNet Services); (b) for "payment," "healthcare operations," and "treatment" as defined in HIPAA regulations (including, without limitation, testing and set up of electronic linkages for "payment" transactions); (c) as expressly permitted in the Agreement; (d) as required by law; (e) to provide data aggregation services as permitted by 45 C.F.R. §164.504(e)(2)(i)(B); and (f) for the proper management and administration of Athena, including, without limitation, making and maintaining reasonable business records of transactions in which Athena has participated or athenaNet has been used (including back-up documentation).

**Article CSD-5. Business Associate Disclosures.** To the extent that it discloses Client PHI pursuant to the purpose in Article CSD-4(d) or (f) that is not also for another of the purposes under Article CSD-4, Athena will (a) obtain reasonable assurances from the person or entity to whom the PHI is disclosed that such person or entity will maintain confidentiality of the PHI and not use or further disclose it except as required by law or for the purpose for which it was disclosed to the person or entity and (b) require the person or entity to whom the PHI is disclosed to notify Athena of any instances of which that person or entity is aware in which the confidentiality of such information has been breached.

**Article CSD-6. Business Associate Termination.** Upon termination of the Agreement, Athena will return, destroy, or continue to extend protections to and limit the use and disclosure of Client PHI to the extent required by and in accordance with 45 C.F.R. §164.504(e)(2)(ii)(I), provided that the Parties agree that it is not feasible in light of reasonable business requirements, regulatory compliance requirements, and the rights and obligations under the Agreement for Athena to return or destroy its business records and transaction databases, including, but not limited to, records and databases of transactions for which Client has used athenaNet or in which Athena has engaged on behalf of Client or records and databases that reflect the use of athenaNet and information that Client or Athena has entered in athenaNet in the course of the Agreement to enable or perform athenaNet Services.

**Article CSD-7. Business Associate Default.** Any material default by Athena of its obligations under Articles CSD-2 through CSD-5 will be deemed a default of a material provision of the Agreement, and, if cure of such default and termination of the Agreement are not feasible, Client may report the default to the U.S. Secretary of Health and Human Services.

**Article CSD-8. Athena Business Records.** Subject to the other requirements and limitations of this Exhibit A, the business records of Athena and all other records, electronic or otherwise, created or maintained by Athena in performance of the Agreement will be and remain the property of Athena, even though they may reflect or contain Client PHI, Confidential Business Information of Client, or other information concerning or provided by Client. All de-identified information created by Athena in compliance with the Agreement will belong exclusively to Athena, provided that Client will not hereby be prevented from itself creating and using its own de-identified information.