1
2
3
4
5
6
7
8                       **UNITED STATES DISTRICT COURT**

9                       **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  VALLEY CHILDREN'S HOSPITAL, a California nonprofit public benefit corporation and VALLEY CHILDREN'S MEDICAL GROUP, a California nonprofit public benefit corporation, | Case No.: 1:21-cv-01439-JLT-EPG |
| 12 | |
| 13 | ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE AND TRANSFERRING THE MATTER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS |
| 14                            Plaintiffs, | |
| 15           v. | (Doc. 8) |
| 16 | |
| 17  ATHENAHEALTH, INC., a Delaware corporation, | |
| 18                            Defendant. | |
| 19 | |

20          Valley Children's Hospital and Valley Children's Medical Group allege Athenahealth, Inc.

21  breached the Parties' contract and negligently performed its obligations under the contract. (Doc. 1.)

22  Athenahealth seeks transfer of the action to the United States District court for the District of

23  Massachusetts pursuant to the Parties' forum selection clause and 28 U.S.C. § 1404(a). (*See* Doc. 8.)

24  Plaintiffs oppose the motion, asserting the forum selection clause operates to make the Eastern District

25  the proper forum or, in the alternative, that the forum selection clause is invalid. (*See* Doc. 16.) The

26  Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and

27  General Order 618. For the reasons set forth below, Athenahealth's motion to transfer venue to the

28  District of Massachusetts is **GRANTED**.

# I.     Background

Valley Children's Hospital is a California nonprofit public benefit corporation with its principal place of business in Madera County, California. (Doc. 1 at ¶ 1.) Valley Children's Medical Group is a California nonprofit public benefit corporation providing professional medical services to Hospital. (*Id*.) Athenahealth is a Delaware corporation with its headquarters and principal place of business in Watertown, Massachusetts. (*See id*. at ¶ 4; Doc. 8 at 1-2.)

Plaintiffs allege that effective November 14, 2012, Hospital and Athenahealth entered into a Master Services Agreement ("MSA") and an MSA Amendment (collectively, the "Agreement"). (Doc. 1 at ¶ 7.) The MSA contains a forum selection clause. Section 12 of the MSA states, in part: "The Federal District Court for the District of Massachusetts or the business litigation section of the state superior court of Massachusetts will be the exclusive venue for any court proceeding between the Parties arising out of, or in connection with, this Agreement." (Doc. 1-1 at 4.) However, paragraph 14 of the MSA Amendment states, in relevant part:

> Section 12 of the Agreement shall be deleted and replaced with the following:
>
> > Section 12. Forum.     The applicable Federal District Court for the state in which the Party named as Defendant will be the exclusive venue for any court proceeding between the Parties arising out of, or in connection with, this Agreement. The Parties hereby submit to and consent irrevocably to the jurisdiction of such courts for these purposes.

(Doc. 1-2 at 3 (internal quotation marks omitted).) Plaintiffs assert that under the Agreement, Athenahealth agreed to provide services including, among other things, "(a) generating and timely submitting claims to payors; (b) posting Remittance Advice Details received from payors; and (c) following up on underpaid and denied claims and working to get them paid." (Doc. 1 at ¶ 9.) Plaintiffs allege Athenahealth breached the Agreement by "failing to adequately and timely process, submit, and follow-up on claims." (*Id*. at ¶ 17.)

Plaintiffs commenced this action in the Eastern District of California, asserting claims against Athenahealth for (1) breach of written contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) negligence. (*Id*. at ¶¶ 15-31.) On December 20, 2021, Athenahealth filed a motion to transfer venue to the District of Massachusetts pursuant to the Parties' forum selection clause and

1   28 U.S.C. § 1404(a). (Doc. 8.) Plaintiffs filed an opposition on February 25, 2022. (Doc. 16.) On

2   March 4, 2022, Athenahealth filed a reply. (Doc. 18.)[1]

3   **II.    Legal Standard**

4          "[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)…" *Atl.*

5   *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). In considering a

6   motion to change venue, "[t]he presence of a forum-selection clause…will be a significant factor that

7   figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)

8   (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A valid forum selection clause constitutes

9   the parties' agreement as to the most proper forum. *Atl. Marine*, 571 U.S. at 63. Further, the

10  "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate

11  expectations and furthers vital interests of the justice system." *Stewart*, 487 U.S. at 33.

12         Accordingly, when a section 1404(a) transfer motion is premised on a forum selection clause,

13  the analysis is adjusted and courts "should ordinarily transfer the case to the forum specified in that

14  clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a

15  § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 62; *see also Stewart*, 487 U.S. at 33

16  ("[A]uthority and prerogative of the federal courts…should be exercised so that a valid forum-

17  selection clause is given controlling weight in all but the most exceptional cases."). Finally, the

18  Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) "provides

19  guidance regarding the extraordinary circumstances in which a forum-selection clause will not

20  control," including the presence of fraud or overreaching, public policy concerns, or grave difficulty

21  and inconvenience. *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915, 917 (9th Cir.

22  2019).

23  ///

24  ///

25  ///

26

27

28

---

[1] As the Parties were informed on September 28, 2021, the Eastern District of California has been in a state of judicial emergency while this motion was pending resolution. (*See* Doc. 4-2.) The action was assigned to the undersigned on January 10, 2022. (*See* Doc. 12.)

## III.     Discussion and Analysis

### A.     Interpretation of the Forum Selection Clause

#### 1.     Terms

As a threshold matter, the Parties dispute the meaning of the terms of the forum selection clause. Therefore, before the Court can decide whether the Parties' forum selection clause should be enforced, it must interpret the terms of the clause. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (explaining that the enforcement of a forum selection clause "necessarily entails interpretation of the clause before it can be enforced").

##### a.     Federal law applies

The rule in the Ninth Circuit is that federal law applies to the interpretation of a forum selection clause. *See Manetti-Farrow*, 858 F.2d at 513; *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). In applying federal law, courts are guided by general principles for interpreting contracts[2]:

> Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first. We apply the primary rule of interpretation…that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it. We read a written contract as a whole, and interpret each part with reference to the whole.

*Doe*, 552 F.3d at 1081 (internal citations and quotation marks omitted); *accord Welenco, Inc. v. Corbell*, 2013 WL 5423100, at *6 (E.D. Cal. 2013).

In interpreting a contract, the Court must first determine whether the contract is ambiguous. *See Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). The fact that parties may dispute the meaning of a contract's terms does not automatically "render the contract ambiguous; a contract is ambiguous 'if reasonable people could find its terms susceptible to more than one interpretation.'"

---

[2] Courts can also look to the Restatement of Contracts as well as California law in applying federal law to interpret contracts. *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015); *see also Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010) (relying on California contract law and Ninth Circuit decisions in interpreting California law because the court found no distinctions between state and federal contract law).

4

*Doe*, 552 F.3d at 1081 (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999); *see also Cent. Arizona Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1127-28 (D. Ariz. 1998) ("To be ambiguous, the terms of the contract must be susceptible to two different and reasonable interpretations, each of which is consistent with the language of the contract as a whole.") (citing *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)). "An interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203 (1981); *Nat. Res. Def. Council v. Kempthorne*, 621 F. Supp. 2d 954, 983 (E.D. Cal. 2009). One party cannot attempt to "distort the interpretation of contracts to reach absurd or unfair results." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (2014); *see also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1340–41 (9th Cir.1989) (ambiguity cannot be based on a "strained" interpretation); *Seagate US LLC v. Cigna Corp.*, 2006 WL 1071881, at *2 (N.D. Cal. 2006) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where non[e] exists." (quoting *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807 (1982)).

### b.       There is no ambiguity

The pertinent language of the Parties' forum selection clause is: "The applicable Federal District Court for the state in which the Party named as Defendant will be the exclusive venue for any court proceeding between the Parties arising out of, or in connection with, this Agreement." (Doc. 1-2 at 3.) It appears that some words have been omitted from the sentence, as it is grammatically incomplete. To determine if an ambiguity exists, the Court first looks to whether there are two reasonable interpretations of the clause's language.

Plaintiffs argue the language should be interpreted to mean that the exclusive and proper venue for adjudication is wherever the plaintiff brings an action against the defendant. (*See* Doc. 16 at 5.) Thus, Plaintiffs argue that because Athenahealth was named as the Defendant in the Eastern District of California, that is the proper venue pursuant to the Parties' forum selection clause. (*See id*.) As Athenahealth argues, if the Court were to accept the interpretation advanced by Plaintiffs, it would render the forum selection clause meaningless and of no effect whatsoever. (*See* Doc. 18 at 3.) "The purpose of a forum selection clause…is, at least in part, to protect defendants and give them a voice as

5

to where a dispute will be heard and resolved." *Claudio-De Leon*, 775 F.3d at 47. Under Plaintiffs' proposed interpretation, Athenahealth would be subject to suit wherever Plaintiffs decided to name it as a defendant, notwithstanding the Parties' connections with that potential forum and without regard to the opinion or protection of Athenahealth. This undermines the purpose of a forum selection clause altogether and such an interpretation would render a strained and absurd result. Therefore, Plaintiffs' interpretation is not a reasonable one.

Athenahealth contends the language of the forum selection clause should be interpreted to read: "The applicable Federal District Court for the state in which the Party named as Defendant *has its principal place of business* will be the exclusive venue…" (*See* Doc. 8-1 at 1 (emphasis added).)[3] Initially, and by its standard terms, the District of Massachusetts was the exclusive forum for suits brought against Athenahealth. (*See* Doc. 1-1 at 4; *see also* Doc. 8-1 at 3.) Athenahealth asserts Plaintiffs "negotiated a change to those standard terms, and the forum-selection clause ultimately agreed to by the parties designates the *defendant's* home state as the exclusive venue for any disputes arising between the parties." (Doc. 8-1 at 3.) The only reasonable and effective interpretation is this: Plaintiffs were not satisfied with the exclusive venue being Massachusetts regardless of who was being sued, so the Parties agreed that the named defendant's home state or state in which its principal place of business was located, would be the appropriate forum. This means that if Plaintiffs were sued, the action must be filed in the Eastern District of California, and if Defendants were sued, the action must be brought in the District of Massachusetts. If the Parties were indeed amenable to either party having the sole discretion in deciding where suit could be brought, as Plaintiffs impliedly argue, the Parties could have eliminated the forum selection clause entirely. They did not do this. Therefore, there is only one reasonable interpretation of the clause, which is that offered by Athenahealth, and as a result, there is no ambiguity. *See Doe*, 552 F.3d at 1081.

---

[3]Athenahealth also asserts that these words were "inadvertently omitted" and that the Court "can and should supply the missing words necessary to make the forum-selection clause comprehensible." (Doc. 18 at 2.) To the extent Athenahealth is requesting reformation of the contract, the Court declines to do so. First, this is not an available remedy as Plaintiffs have not requested reformation. *See Alameda Cty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1195 n.31 (2013) (declining to reform a contract—although a proper remedy for a scrivener's error or mutual mistake—when plaintiff did not request such relief). Moreover, reformation is unnecessary as the Court's interpretation is sufficient without resorting to reformation. *See Kansas v. Nebraska*, 574 U.S. 445, 470 (2015) ("courts should hesitate, and then hesitate some more, before modifying a contract").

Finally, the Court recognizes that a fundamental rule of contract interpretation is if the contract language is ambiguous, the Court should construe the language against the drafter—here, Athenahealth. *Interpetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998 (9th Cir. 1983); *United States v. Haas and Haynie Corp.*, 577 F.2d 568, 574 (9th Cir. 1978). However, this rule "applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (quoting 3 A. Corbin, Contracts § 559, pp. 268-70 (1960)); *see also United States ex rel. Yardley Drilling Co. v. Erickson Paving Co.*, 465 F.2d 396, 400 (9th Cir. 1972) ("this rule applies only where, after examining the entire contract, the relation of the parties, their intentions, and the circumstances under which they executed the contract, the ambiguity remains unresolved").

Accordingly, in examining the contract, relations, intentions, and circumstances, there is only one reasonable interpretation and thus, no ambiguity. The Court interprets the language of the clause to mean that the proper forum is where the named defendant's principal place of business[4] is located.

### 2.       Force and scope

District courts interpreting forum selection clauses in the context of motions to transfer venue must address (1) whether the clause is mandatory or permissive, and (2) whether the action falls within the scope of the clause. *Claudio-De Leon*, 775 F.3d at 47; *see also Cooley v. Target Corp.*, 2020 WL 7230985, at *2-4 (C.D. Cal. 2020) (addressing first whether clause was mandatory or permissive, and second whether the action fell within the clause's scope).

#### a.       The forum selection clause is mandatory

If a forum selection clause contains mandatory language, it will be enforced. *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1161 (E.D. Cal. 2003) (citing *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). If, on the other hand, the language is non-mandatory, suit may be brought elsewhere. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). For a forum selection clause to be mandatory, the language must clearly require

---

[4] It is not the Court's position that Athenahealth's posited interpretation contains the only possible language the Parties may have intended. In theory, the Parties could have intended the proper forum to be the named defendant's place of incorporation. However, neither party has requested the Court to draw such a distinction, and Athenahealth's, as opposed to Plaintiffs', interpretation is the only reasonable one.

1   exclusive jurisdiction. *Id.* at 77; *see also Saccani Distrib. Co. v. Clean Cause, Inc.*, 2021 WL 3883879,

2   at *5 (E.D. Cal. 2021) ("To be mandatory, a forum selection clause must contain wording suggesting

3   that the parties intended to designate the specified forum as the *exclusive* forum." (citing *Thabet*

4   *Mgmt., Inc. v. Nautilus Ins. Co.*, 2021 WL 2555127, at *3 (D. Or. 2021)) (emphasis in original)).

5            As noted, the forum selection clause in the Parties' Agreement states, in relevant part: "The

6   applicable Federal District Court for the state in which the Party named as Defendant will be the

7   exclusive venue for any court proceeding between the Parties arising out of, or in connection with, this

8   Agreement." (Doc. 1-2 at 3.) Because the language of the forum selection clause contains the word

9   "exclusive", the Court finds this language is mandatory. *See Koresko*, 291 F. Supp. 2d at 1162-63

10  (finding mandatory a forum selection clause which stated: "you [Plaintiff] hereby consent to the

11  exclusive jurisdiction of the state and federal courts sitting in the State of Washington"); *see also*

12  *Kachal, Inc. v. Menzie,* 738 F. Supp. 371, 373-74 (D. Nev. 1990) ("[m]andatory forum selection

13  clauses contain language such as 'exclusive' or 'only'"); *c.f. Hunt Wesson,* 817 F.2d at 77 (holding

14  that a forum selection clause containing the language "shall" was permissive rather than mandatory).

15                  *b.        The action falls within the scope of the clause*

16           The Parties' forum selection clause covers "any court proceeding between the Parties arising

17  out of, or in connection with, this Agreement." (Doc. 1-2 at 3.) Neither party argues that this action is

18  outside the scope of the forum selection clause. Thus, having interpreted the terms and scope of the

19  clause, the Court will proceed to determine whether the forum selection clause is valid and

20  enforceable. *See Manetti-Farrow*, 858 F.2d at 513.

21       **B.        Enforceability of the Forum Selection Clause**

22           "For the convenience of parties and witnesses, in the interest of justice, a district court may

23  transfer any civil action to any other district or division where it might have been brought or to any

24  district or division to which all parties have consented." 28 U.S.C. § 1404(a). In cases not involving a

25  forum selection clause, "a district court considering a § 1404(a) motion must evaluate both the private

26  interests of the parties and public-interest considerations..." *Atl. Marine*, 571 U.S. at 51, 62.[5] However,

27

28  _____

    [5] Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of
    compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of

                                                    8

when the transfer motion is premised on a forum selection clause, as here, the section 1404(a) analysis is adjusted in three ways. *Id*. at 63. First, the plaintiff's choice of forum merits no weight and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id*. Second, a section 1404(a) transfer will not carry with it the original venue's choice-of-law rules. *Id*. at 64. Third, arguments about the parties' private interests should not be considered and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. Thus, while the Court may consider the public interest factors, they will "rarely defeat a transfer motion" and the "practical result is that forum-selection clauses should control except in unusual cases." *Id*. In sum, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id*. at 62; *see also id*. at 60 ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart*, 487 U.S. at 33)).

Though what is considered unusual, extraordinary, or exceptional was not addressed in *Atlantic Marine*, the Ninth Circuit has routinely held that *Bremen* is instructive in determining the validity and enforceability of a forum selection clause. *See Gemini*, 931 F.3d at 915 (holding that *Bremen* remains good law in determining what constitutes an "exceptional reason" or "extraordinary circumstances" under *Atlantic Marine*); *Advanced China Healthcare, Inc.*, 901 F.3d at 1088 (explaining that *Atlantic Marine* provides "little guidance" as to what constitutes "exceptional" or "extraordinary circumstances" and turning to the guidance of *Bremen* in making that determination).

It should be noted that Plaintiffs argue alternatively that the Parties understood the terms of the forum selection clause differently and as such, the clause is invalid for lacking a "meeting of the minds." (Doc. 16 at 5.) Plaintiffs rely upon *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999), in furthering their argument. (*Id*. at 6.) In *Laxmi*, the defendant offered to sell a franchise in California to the plaintiff, and as required under California law, the defendant provided to the plaintiff a Uniform Franchise Operating Circular, a document summarizing the material terms of the franchise agreement. *Laxmi*, 193 F.3d at 1096. The Circular stated that certain provisions of the franchise

---

view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Atl. Marine*, 571 U.S. at 63 n.6 (internal citations and quotation marks omitted).

agreement may not be enforceable under California law. *Id*. The parties subsequently entered into the franchise agreement which required arbitration to occur in Oklahoma and made no mention of California law. *Id*.

The plaintiff ultimately filed suit in California. *Laxmi*, 193 F.3d at 1097. The district court treated the complaint as a petition to compel arbitration and the court held that arbitration should proceed in Oklahoma, dismissing the case for lack of jurisdiction to compel arbitration. *Id*. On appeal, the Ninth Circuit held that the parties never agreed to a forum outside of California because there was no evidence that the defendant "ever indicated that it would insist upon an out-of-state forum despite the contravening California law." *Id*. The court found the plaintiff's argument that "it had no reasonable expectation that it had agreed to a forum other than California" persuasive and remanded for entry of an order requiring arbitration to proceed in California. *Id*. at 1097-98.

Here, the facts are readily distinguishable. First, there is no pre-contract notice, such as the Circular in *Laxmi*, stating that a certain forum's law may render a provision of the Parties' agreement unenforceable. In fact, Plaintiffs have neither asserted that another document exists nor presented evidence of such. There is only one operative Agreement. As Athenahealth argues, *Laxmi* dealt with documents containing conflicting statements as to the enforceability of the forum selection clause and there are no such conflicting documents here. (Doc. 18 at 3 n.1.) *Laxmi* specifically relied on statements in the Circular that put the parties on notice that the franchise agreement might not be enforceable under California law. *See Bradley v. Harris Rsch., Inc.,* 275 F.3d 884, 891 (9th Cir. 2001). That is not the case here. Finally, courts analyzing a forum selection clause in the context of a franchise agreement have done so pursuant to *Laxmi*. *See id.*; *see also Nygaard v. Prop. Damage Appraisers, Inc.*, 2017 WL 1128471 (E.D. Cal. 2017); *Roberts v. Synergistic Int'l, LLC*, 676 F. Supp. 2d 934 (E.D. Cal. 2009). However, the Court reemphasizes the established precedent for analyzing a forum selection clause in cases not involving a franchise agreement. *See Bremen*, 407 U.S. at 12-13, 15, 18; *Atl. Marine*, 571 U.S. at 62-65; *Gemini*, 931 F.3d at 915.

### 1.   Plaintiffs' choice of forum and choice-of-law rules

Under *Atlantic Marine*, Plaintiffs' selection of this forum merits no weight, and a section 1404(a) transfer will not carry the original forum's choice-of-law rules.

10

2.      Private and public interest factors

As stated above, in cases involving forum selection clauses, only the public interest factors may be considered by the Court. *Atl. Marine*, 571 U.S. at 64. These factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (internal citations and quotation marks omitted).

a.      *Court congestion*

Referencing the Court's Judicial Emergency Standing Order, Athenahealth contends that this factor "strongly favor[s] transferring this case to the District of Massachusetts." (Doc. 8-1 at 8.) Citing the *U.S. District Courts – Civil Cases Filed, Terminated, and Pending*, Athenahealth notes that the District of Massachusetts "has approximately 2500 fewer pending cases than the Eastern District of California and eleven active judges compared to the Eastern District's four." (*Id*. at 9.) Plaintiffs argue that a new district judge has been appointed and another nominated, which, upon her confirmation, will result in the Eastern District operating "at its full capacity." (Doc. 16 at 7.) In response, Athenahealth asserts, "new judicial appointments may eventually help alleviate the burden, [but] the Eastern District is still laboring under a backlog of cases that the District of Massachusetts is not." (Doc. 18 at 5.)

The statistics undoubtedly reflect more court congestion in this district than in the District of Massachusetts. Plaintiffs have not met their burden of showing this factor favors keeping the matter in California.

b.      *Local interest in the controversy*

Plaintiffs argue, "California has an interest in the integrity of contracts negotiated within its boundaries, to be carried out in California, and concerning the process of claims in California." (Doc. 16 at 7.) Plaintiffs continue that they operate exclusively in California, their clients are California residents, and the claims processed by Athenahealth originate in California. (*Id*.)

Athenahealth asserts that "there are no significant localized issues that require this case to be decided in California. This case involves a contract formed in Massachusetts and California,

11

1    Athena[health]'s performance of that contract in Massachusetts, and the effect on Plaintiffs in

2    California." (Doc. 8 at 9.) Athenahealth relies on *Saccani* in asserting that Plaintiffs have identified

3    "no extraordinary circumstances that make this contract dispute unlike countless others where a party

4    performs a contract in one state and the effects of that performance are felt in another state." (Doc. 18

5    at 5.) The court in *Saccani* explained that the plaintiff had not established that the transferee court

6    could not adjudicate its claims, that the transferee court lacked an interest in fair adjudication, or any

7    public policy cautioning against transfer. *Saccani*, 2021 WL 3883879, at *5. Accordingly, the court

8    was unpersuaded by the plaintiff's argument that the Eastern District of California had an interest in

9    the outcome of the case because one of its residents was injured there, as it did not "rise to the level"

10   of suggesting that this was an "extraordinary case" that would defeat a motion to transfer. *Id.*

11        Similarly, Plaintiffs, who bear the burden of showing transfer is *unwarranted*, have not

12   established that Massachusetts cannot adjudicate its claims, that Massachusetts lacks an interest in fair

13   adjudication, nor have they raised any public policy concerns that would caution against transfer. It is

14   not enough that California has an interest in protecting its citizens, or that Plaintiffs operate in

15   California and were injured there. The circumstances must be extraordinary. *See Atl. Marine*, 571 U.S.

16   at 64.

17                           c.    *Familiarity of each forum with the applicable law*

18        Athenahealth asserts that "there are not likely to be material differences between the law of

19   Massachusetts and the law of California pertinent to Plaintiffs' contract and negligence claims." (Doc.

20   8-1 at 9.) Plaintiffs do not address this factor. (*See generally* Doc. 16.) Thus, Plaintiffs have not met

21   their burden of showing this factor favors keeping the matter in California.

22                       3.    Exceptional reasons or extraordinary circumstances

23        Forum selection clauses are prima facie valid and should be enforced unless the party seeking

24   to defeat the clause makes a "strong showing" that enforcement would be unreasonable. *Bremen*, 407

25   U.S. at 10, 15. A Court will find enforcement unreasonable if: "(1) its incorporation into the contract

26   was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is

27   so gravely difficult and inconvenient that the complaining party will for all practical purposes be

28   deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy

of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing *Bremen*, 407 U.S. at 12-13, 15, 18; *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 591 (1991) (internal citations and quotation marks omitted)).

        a.        *Presence of fraud, undue influence, or overweening bargaining power*

Plaintiffs do not allege fraud, undue influence, or overweening bargaining power. (*See generally* Docs. 1, 16.) In fact, Plaintiffs assert the Parties negotiated the terms of the Agreement, which included a series of amendments that were "more favorable to Plaintiff[s]"—the forum selection clause being one. (Doc. 16 at 5.) Athenahealth asserts Plaintiffs were "actively involved in negotiating the terms of the Agreement…including the forum-selection clause the parties ultimately agreed to." (Doc. 8-1 at 3.) Athenahealth continues that Plaintiffs cannot show fraud or overreaching because Plaintiffs specifically negotiated for that clause. (*Id*. at 5.) Further, the Parties signed the MSA and Amendment concurrently, which demonstrates the Parties engaged in arm's length negotiations prior to agreeing to the terms. Accordingly, the Court finds no fraud, undue influence, or overweening bargaining power.

        b.        *Inconvenience of the District of Massachusetts*

Being that Plaintiffs seek to defeat the forum selection clause, Plaintiffs bear the burden of demonstrating that Massachusetts is an unwarranted forum. *Atl. Marine*, 571 U.S. at 63. Notably, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 64. Thus, absent a showing that suit in Massachusetts would be so "manifestly and gravely" difficult as to deprive Plaintiffs of their day in court, such as forcing the parties to litigate their disputes in a "remote alien forum", the forum selection clause is likely enforceable. *Bremen*, 407 U.S. at 16, 19. In *Bremen*, the Supreme Court held that if it can be said "with reasonable assurance" that the parties freely negotiated and contemplated inconvenience, "it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Id*. at 16.

As noted, both parties concede the Agreement was freely negotiated and contemplated, as evidenced by the specific amendment to the forum selection clause to be more favorable to Plaintiffs, among other amendments. (*See* Doc. 8-1 at 3; Doc. 16 at 5.) Plaintiffs raise no arguments

13

demonstrating they would suffer such grave difficulty by litigating in Massachusetts as to deprive them of their day in court. As such, Plaintiffs have not met their burden of showing the heightened level of inconvenience it would suffer by being bound by terms of the Agreement, including the forum selection clause, that they freely negotiated and agreed to.

*c.   Public policy in California*

Plaintiffs do not identify any public policy concerns and there do not appear to be any. Further, there is no evidence that the laws of Massachusetts would be unfavorable to Plaintiffs. Thus, Plaintiffs fail to identify public policy concerns that would require the action to remain in Eastern District of California.

**D.   Motion to Dismiss**

In light of the Court's decision, the Court declines to consider Athenahealth's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed on December 20, 2021. (Doc. 7.)

**IV.   Conclusion and Order**

Because Plaintiffs have not met their burden of showing that transfer is unwarranted, transfer to the District of Massachusetts is appropriate. *See Atl. Marine*, 571 U.S. at 63.

Based upon the foregoing, the Court **ORDERS**:

1.   Defendant Athenahealth's motion for transfer of venue (Doc. 8) is **GRANTED**.

2.   The matter is **TRANSFERRED** to the United States District Court for the District of Massachusetts.

IT IS SO ORDERED.

Dated:   **May 3, 2022**

UNITED STATES DISTRICT JUDGE